IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

TEZELLE MOORE,                    §
                                 §
            Petitioner,          §
                                 §
v.                               §        No. 4:16-CV-024-Y
                                 §
LORIE DAVIS, Director,[1]        §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
            Respondent.          §


## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254 filed by petitioner, Tezelle Moore, a
state prisoner, against Lorie Davis, director of the Texas
Department of Criminal Justice, Correctional Institutions Division,
Respondent. After having considered the pleadings and relief sought
by Petitioner, the Court has concluded that the petition should be
denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

In February 2011 in Tarrant County, Texas, Case No. 1220521D,
Petitioner was indicted for murder in the shooting death of his
neighbor, Ernest Davis, (count one) and felon in possession of a

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director
of the Correctional Institutions Division of the Texas Department of Criminal
Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis was
automatically substituted as the party of record.

firearm (count two).[2] (Adm. R., SH02 11, ECF No. 9-2.) The indictment also contained deadly-weapon and repeat-offender notices. (*Id.*) In March 2012 Petitioner was re-indicted in Case No. 1276457R for aggravated assault with a deadly weapon (count one) and felon in possession of a firearm (count two). (*Id.* at 7.) The re-indictment also contained deadly-weapon and repeat-offender notices. (*Id.*) Petitioner pleaded not guilty and his jury trial commenced on June 25, 2012. The jury found Petitioner guilty of aggravated assault, but it found Petitioner not guilty of being a felon in possession of a firearm. It then violated the Court's instructions by proceeding to find that petitioner did not use or exhibit a deadly weapon, a firearm, during commission of the offense.[3] (*Id.*, Clerk's R. 179-81, ECF No. 9-2.) Thereafter, Petitioner pleaded true to the repeat-offender notice, and the jury assessed his punishment at forty years' confinement. (*Id.* at 200.) Petitioner appealed his conviction, but the Fourth District Court of Appeals of Texas affirmed the trial court's judgment and, on February 12, 2014, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. (*Id.*, Docket Sheet 2, ECF No. 9-3.) Petitioner did not seek writ of certiorari.

---

[2]Petitioner's brother, Jeremy B.J. Miller, was also charged with murder in Davis's death and is serving a life sentence. *See Moore v. State,* No. 04-12-00492-CR, 2013 WL 3804577 (Tex. App.–San Antonio July 17, 2013, pet. ref'd).

[3]The jury was instructed that only if it found Petitioner guilty of the offense of felon in possession of a firearm as charged under count two, was it to consider the "special issue" of the deadly weapon. (*Id.* at 181.)

On December 10, 2014,[4] Petitioner filed a state application for habeas relief challenging his conviction, which was denied by the Texas Court of Criminal Appeals on September 9, 2015, without a hearing on the findings of the trial court. (*Id.,* SH02 & Action Taken, ECF Nos. 9-17 & 9-18.) Petitioner filed his original federal habeas petition on January 5, 2016,[5] and was granted permission to file his amended petition on July 19, 2016. (Pet. 10, ECF No. 1; Order, ECF No. 21; Am. Pet., ECF No. 22.)

## II.  ISSUES

Petitioner raises five grounds for relief in his amended petition. Under grounds one through four, Petitioner asserts that the Texas Court of Criminal Appeals unreasonably applied federal law, as determined by the United States Supreme Court, in concluding–

(1)  that the trial court's "supplemental jury instruction" was legally sufficient;

(2)  that there was sufficient evidence to support his conviction for aggravated assault;

(3)  that his trial counsel was not ineffective by failing to request a lesser-included-offense

---

[4]A prisoner's state habeas application is deemed filed when placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). Petitioner's state application does not provide the date he placed the document in the prison mailing system but does reflect the date it was signed by Petitioner. Therefore, for purposes of this Opinion and Order, the state application is deemed filed on that.

[5]Similarly, a federal habeas petition filed by a prisoner is deemed filed when the petition is placed in the prison mail system for mailing. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

>           instruction on deadly conduct; and

>    (4)   that his right to cross-examine witnesses regarding
>          their pending felony criminal cases was forfeited
>          due to ineffective assistance of counsel.

(Am. Pet. 6-7, ECF No. 22.) Under Petitioner's fifth ground, he asserts that the Texas Court of Criminal Appeals abused its discretion by "making an unreasonable determination of the facts, without conducting a 'sue [sic] sponte' review of the record."[6] (*Id.* at 11-13.)

### III.   RULE 5 STATEMENT

Respondent believes that the third ground enumerated above is time-barred but does not allege that the remaining grounds are barred by successiveness, the statute of limitations, or a failure to exhaust state-court remedies. (Resp't's Am. Answer 6-7, ECF No. 25.)

### IV. STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year limitations period for state prisoners filing federal habeas petitions. *See* 28 U.S.C. § 2244(d)(1). The one-year limitations period begins on the latest of several dates. Relevant here is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for

---

[6]The Court's understanding and enumeration of Petitioner's claims differ from that of Respondent but correspond with the specific grounds raised in Petitioner's amended petition.

seeking such review." *Id.* § 2244(d)(1)(A). The limitations period is tolled during the pendency of a state habeas application with respect to the pertinent judgment or claim. *Id.* § 2244(d)(2).

Petitioner's judgment of conviction became final upon expiration of the time that he had for filing a petition for writ of certiorari in the United States Supreme Court on May 13, 2014. *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir. 1998); Sup. Ct. R. 13. Therefore, the statute of limitations began to run the following day and closed one year later on May 13, 2015, absent any tolling. Petitioner's state habeas application, pending from December 10, 2014, through September 9, 2015, tolled limitations 274 days, making his federal petition due on or before February 11, 2016. Thus, his original petition filed on January 5, 2016, was timely. His amended petition, however, filed on July 19, 2016, was not.

Federal Rule of Civil Procedure 15, which allows a party to amend its pleadings, applies to federal habeas-corpus proceedings. *United States v. Saenz,* 282 F.3d 354, 356 (5th Cir. 2002). A supplemental or amended petition must be made within the one-year statute of limitations unless the supplement or amendment relates back to the original petition. Fed. R. Civ. P. 15. While Rule 15(c)(1)(B) provides that an amendment "relates back" when the amendment "asserts a claim that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading," the Supreme Court has construed this

5

provision narrowly when applied to federal habeas corpus cases. In *Mayle v. Felix*, the Supreme Court held that "[a]n amended habeas petition does not relate back (and thereby escape AEDPA's one year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." 545 U.S. 644, 650 (2005).

Under his third ground, Petitioner claims that the Texas Court of Criminal Appeals unreasonably applied federal law, as determined by the United States Supreme Court, in concluding that his trial counsel was not ineffective in failing to request a lesser-included-offense instruction on deadly conduct. Respondent asserts that this ineffective-assistance-of-counsel claim does not relate back to the original petition because it is a new claim, raising new theories and facts different from those underlying the original claims. (Resp't's Am. Answer 13, ECF No. 23-1.) According to Respondent,

> [t]he petition originally filed by [Petitioner] lacked any substance and failed to provide any facts or legal authority [that] would entitle [Petitioner] to relief, or even explain what his allegations were in the context of ineffective assistance of counsel.

(*Id.*)

Petitioner, on the other hand, asserts that (all spelling, punctuation, and/or grammatical errors are in the original)–

> although this claim set's forth new fact's not mentioned in the original petition these fact's are "tied to a common core of oprative fact's argued in the original petition", where petitioner Moore argued that because the jury found him not guilty of felon in possession of a firearm, the state failed to prove "every element of the

6

indictment as charged", therefore violating Petitioner's
right's under the due process clause of the 14th
Amendment to the United States Constitution. Moreover,
petitioner Moore assert's that the new fact's are "tied
to" his challenge to the sufficiency of evidence to
support the conviction for aggravated assault, because
Petitioner did not possess a firearm during the
commission of the offense, therefore, in light of this
evidence, Petitioner was entitled to a lesser included
offense instruction of deadly conduct. Thereby,
Petitioner's trial counsel's abandoning the lesser
included offense instruction of "deadly conduct" was
deficient performance that resulted in Petitioner being
convicted of aggravated assault w/ a deadly weapon.
Stated differently, this deficient performance violated
Petitioner's due process right under the 14th Amendment
to the United States Constitution, as well as
Petitioner's 6th Amendment.

(Pet'r's Traverse 3-4, ECF No. 29-1 (citations omitted).)

Petitioner's argument is not persuasive. The Court agrees that
the original petition did not contain ground three and that ground
three asserts a new claim for habeas relief based on facts that do
not relate to or enhance Petitioner's claims in the original
petition–*i.e.,* that do not share the "same common core of operative
facts." Accordingly, the claim does not relate back to the original
petition and is time-barred.

## V. PROCEDURAL DEFAULT

Respondent asserts that ground four is procedurally barred from
the Court's review because the claim, although raised on appeal, was
overruled by the appellate court because it was not preserved for
appellate review by a contemporaneous objection. (Resp't's Am.
Answer 16-17; Adm. R., Mem. Op. 5-6, ECF No. 9-15.)

7

Under the procedural-default doctrine, federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). It is well settled that Texas's contemporaneous-objection rule is an independent and adequate state procedural bar to federal habeas review. *See, e.g., Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). In *Wainwright v. Sykes,* the Supreme Court held that, absent a showing of "cause" and "prejudice," federal habeas review is barred if the petitioner fails to comply with a state contemporaneous-objection rule at trial. *Id.* at 87. The state court clearly and unambiguously relied on the procedural default in overruling Petitioner's fourth claim; thus, the claim is immune from federal review unless Petitioner can demonstrate "cause and actual prejudice as a result of the alleged violation of federal law." *Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002).

In his ground four, Petitioner claims that the Texas Court of Criminal Appeals unreasonably applied federal law, as determined by the United States Supreme Court, in concluding that his right to cross-examine state witnesses regarding their pending criminal cases was forfeited due to his trial counsel's ineffectiveness in failing to object to the restriction on his right to confrontation. (Am. Pet. 12, ECF No. 22; Pet'r's Traverse 23-24. ECF No. 29-1.)

A criminal defendant has a constitutional right to the

effective assistance of counsel at trial. *See* U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court emphasized in *Harrington v. Richer* the standard under which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the

*Strickland* standard itself.

562 U.S. 86, 101 (2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective-assistance claim was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

At trial, three eyewitnesses testified to the events leading up to the shooting: Patrick and Carolyn Cato and Patricia Manning. Of the three, Patrick and Carolyn Cato had unrelated pending criminal cases–*i.e.,* "felony drug cases that occurred on March 7, 2012." (Adm. R., Reporter's R., vol. 3, 8, ECF No. 9-7.) There was no plea deal for their testimony in Petitioner's case. (*Id.*) Patricia Manning had two prior criminal convictions, which she acknowledged during direct examination. (*Id.*, Reporter's R., vol. 4, 187, ECF No. 9-8.)

The state habeas court entered the following factual findings on the issue:

18. Hon. Salvant objected to the State's motion in limine for the pending cases of Carolyn Cato and Patrick Cato.

19. The court granted the State motion in limine [holding evidence of the pending charges were inadmissible under Texas Rules of Evidence 608 or 609] but stated, "I'm not going to rule on anything that's – I'm not going to – that's not a – it's not proper for me to rule on what's admissible at this

point because I don't know what you're going to present until it's actually presented and the State makes an objection."

20. There is no evidence that Carolyn Cato's pending case caused her to be biased against Applicant and in favor of the State.

21. There is no evidence that Patrick Cato's pending case caused him to be biased against Applicant and in favor of the State.

22. Patricia Manning did not have any pending criminal cases.

23. Patricia Manning saw the entire incident.

24. Patricia Manning testified that she personally saw Applicant shooting at the victim.

25. Even if counsel had impeached Patrick Cato and/or Carolyn Cato with their pending cases, Patricia Manning's testimony would have been sufficient to prove Applicant committed the offense.

26. There is no evidence that the outcome of the proceeding would have been different had counsel objected differently to the State's motion in limine.

(*Id.*, State Habeas R. 80, ECF No. 9-18.)

Based on its findings, the state court concluded that petitioner failed to prove that counsel's objection to the state's motion in limine was inadequate or that there was a reasonable probability that the outcome of the proceeding would have been different had counsel objected differently to the motion in limine. (*Id.* at 84-85.) The state court's determination of the claim is a reasonable application of *Strickland*.

Even assuming counsel's objection was deficient and resulted

in the procedural default in state court, Petitioner fails to establish any prejudice as result of counsel's deficiency. Confrontation error is subject to a harmless-error analysis. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993). *See also Delaware v. Van Arsdall,* 475 U.S. 673, 679, 684 (1986) (holding that it was a violation of the Confrontation Clause for a trial court to prohibit all inquiry into the possibility that a witness would be biased as a result of pending criminal charges against him subject to harmless-error analysis). In *Delaware v. Van Arsdall,* the United States Supreme Court explained:

> To determine whether the error was harmless, we consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*Hafdahl v. Johnson,* 251 F.3d 528, 540 (5th Cir. 2001) (quotation marks omitted).

As the state court found, the exclusion of evidence of the Catos' pending cases was harmless. The cases were not related to Petitioner's case; cross-examination was not otherwise restricted; testimony regarding the Catos' criminal convictions was admitted; the Catos' testimony was cumulative to Patricia Manning's and corroborated her testimony; and the case against Petitioner was strong. Because Petitioner cannot show prejudice, his confrontation claim is procedurally barred from this Court's review.

## VI. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the AEDPA. See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. When the Texas Court of Criminal Appeals denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,*

372 U.S. 293, 314 (1963); *Schartzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez,* 274 F.3d at 948 n.11; *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

## VII. DISCUSSION

### A. Jury Instruction

Under his first ground, Petitioner raises the following claim (all spelling, punctuation, and/or grammatical errors are in the original):

> The [Texas] Court of Criminal Appeals made an objectively unreasonable application of clearly established Supreme Court precedent, in summarrily concluding that the trial courts "supplemental jury instruction was legally sufficient.

(Am. Pet. 6, ECF No. 22.)

During deliberations in the guilt/innocence phase, the jury sent a note to the trial court, stating "[o]n Count One, the aggravated assault. We need clarification to know, does the defendant have to have a deadly weapon in his possession?" (Adm. R., Clerk's R. 184, ECF No. 9-2.) The court responded, over Petitioner's objection, as follows:

> The Court has received your Jury Note No. 3. As to

the Count One of the aggravated assault, if you believe
the Defendant acted alone, then he must be in possession
of a deadly weapon to be guilty of aggravated assault.
If, however, you believe he acted as a party with Jeremy
Miller [Petitioner's brother], as previously defined in
the Court's Charge, then he does not need to be in
possession of a deadly weapon.

(*Id.* at 185.)

Petitioner asserts that the jury note did not reference or ask
about the law of parties and that by injecting the law or parties
into its answer, the trial court impermissibly focused the jury on
the law of parties and unjustly singled out Jeremy Miller's conduct.
(Am. Pet. 11, ECF No. 22.)

Petitioner raised the claim on appeal, and the appellate court,
relying solely on state statutory and case law, addressed the issue
as follows:

> On appeal, appellant asserts the trial court's
> instruction implicitly commented on the weight of the
> evidence and impermissibly encouraged the jury to
> concentrate on specific evidence during their
> deliberations. Appellant contends the jury's note did not
> reference or ask about law of the parties; therefore,
> when the trial court injected law of the parties into its
> answer, the court impermissibly focused the jury on law
> of the parties, and unjustly singled out Jeremy Miller's
> conduct. Appellant contends that because the jury
> question asked only about aggravated assault, the only
> permissible answer should have been "yes, an individual
> does have to be in possession of a deadly weapon to be
> found guilty of aggravated assault with a deadly weapon."
> We do not agree that the trial court's answer should have
> been so narrow.

> The jury is governed by the law it receives from the
> court. A trial court may not comment on the weight of the
> evidence in the charge. Although the trial court
> ordinarily provides instructions to the jury before the
> jury retires to deliberate, the court may give further

written instructions upon the jury's written request for additional guidance regarding applicable law. When the trial court responds substantively to a question the jury asks during deliberations, that communication amounts to a supplemental jury instruction, and the trial court must follow the same rules that generally govern jury instructions.

Because a trial court's answer to a jury's question must comply with the same rules that govern charges, the trial court, as a general rule, must limit its answer to setting forth the law applicable to the case; it must not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury.

Here, the jury charge on aggravated assault included the law of parties and the application paragraph allowed conviction if the jury found that appellant "did intentionally or knowingly or recklessly, acting alone *or as a party, as that term has been previously defined, with Jeremy Miller,* threaten imminent bodily injury to Ernest Davis and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a firearm, then you will find the Defendant, Tezelle Moore, guilty of the offense of aggravated assault, as charged in Count One of the indictment." We believe the trial court's answer to the jury question merely restated the application paragraph contained in the jury charge; thereby treating both theories of liability in a neutral manner. Therefore, we conclude the trial court did not impermissibly answer the jury's question.

(Adm. R., Mem. Op. 9-11, ECF No. 9-15 (citations omitted) (emphasis in original).) In turn, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review without written order, which constitutes an adjudication of the issue against Petitioner.

Petitioner has failed to rebut the presumption of correctness of the state courts' adjudication of the claim. Nevertheless, the

claim does not implicate a federal constitutional right. Texas courts are prohibited from commenting on the weight of the evidence as a matter of state law. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). This court must defer to the state courts on matters of state statutory interpretation. *See Weeks v.* Scott, 55 F.3d 1059, 1063 (5th Cir. 1995); *Fierro v. Lynaugh,* 879 F.2d 1276, 1278 (5th Cir. 1989).

## B. Sufficiency of the Evidence

Under his second ground, Petitioner raises the following claim (all spelling, punctuation, and/or grammatical errors are in the original):

> The [Texas] Court of Criminal Appeals made an unreasonable application of clearly established Supreme Court precendent, in summarally concluding that there was sufficient evidence to support conviction of aggravated assault.

(Am. Pet. 6, ECF No. 22.)

In essence, Petitioner contends that the jury's guilty verdict on the aggravated-assault charge is inconsistent with the jury's acquittal on the charge of felon in possession of a firearm and the finding that he did not use or exhibit a deadly weapon during the commission of the offense. Under Texas law, a person commits aggravated assault if he commits assault and uses or exhibits a deadly weapon during commission of the offense. TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). Petitioner argues that the jury's acquittal and finding of no deadly weapon as to the felon-in-

possession charge effectively negates the second element of aggravated assault. (Pet'r's Traverse 10, ECF No. 29-1.)

Relying on *Dunn v. United States,* 284 U.S. 390 (1932), *Jackson v. Virginia,* 443 U.S. 307 (1979), and relevant state law, the appellate court addressed this claim as follows:

> Inconsistent verdicts in prosecutions based on the same evidence do not require a reversal on the ground of legal insufficiency. "Inconsistent verdicts do not necessarily imply that the jury convicted the defendant on insufficient evidence, but may simply stem from the jury's desire to be lenient or to execute its own brand of executive clemency. Even where an inconsistent verdict might have been the result of compromise or mistake, the verdict should not be upset by appellate speculation or inquiry into such matters. Consequently, we are limited to determining whether the evidence is legally sufficient to support the jury's guilty verdict on count one. "What the factfinder did with the remainder of the charge is immaterial."
>
> When determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt, we use the standard of review set forth in *Jackson v. Virginia.* Under this standard, we ask whether, considering all of the evidence in the light most favorable to the verdict, a jury was rationally justified in finding guilt beyond a reasonable doubt. "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." This legal sufficiency standard applies equally to both direct and circumstantial evidence.
>
> Appellant and his family lived across the street from the complainant, Ernest Davis, and his family. Patrick Cato lived in the same house as Ernest and has known appellant for most of his life. Earlier in the afternoon of November 8, 2010, appellant and Patrick had a confrontation about parking cars in front of the houses. Patrick said appellant told appellant's brother

to "shoot at" anyone who pulled up in front of the house. Several adults and children were outside of both houses at the time, including Ernest's grandmother-in-law, Carolyn Cato, who also lived in the same house with Ernest. Carolyn witnessed the argument between appellant and Patrick, after which appellant offered to take her to the store. When they returned from the store, appellant said he wanted to talk to Ernest, but he had not yet returned home from work.

When Ernest returned from work, he walked over to appellant and Patrick who were again talking. For no apparent reason, appellant hit Ernest in his head and the two began fighting in the street. After several minutes of fighting, Ernest, who was apparently winning the fight, stopped and went into his house to get his asthma pump. Patrick, who had been walking toward his house and, therefore, had his back turned, heard appellant say "get the guns" and then gunfire. Patrick had earlier seen appellant's gun under a shirt on the hood of a Chevy Traverse. Patrick had also seen appellant with the revolver earlier in the day and knew appellant had fired the gun inside his house on another evening about a week earlier.

When the gunfire started, Patrick picked up his small son, and with his wife ran to the side of his house for cover. Patrick said he looked around the corner and saw appellant and his brother, Jeremy Miller, shooting. As they were shooting, both appellant and Jeremy stood or crouched near the Traverse. Patrick said appellant fired his gun about three times with Jeremy firing the most. Patrick said no one else from appellant's house fired a weapon. However, Patrick also heard gunfire coming from his house and he learned later that Ernest was the person firing the gun. The shooting continued for almost eight minutes. Eventually, Patrick ran into his house to find Ernest at the front of the house bleeding from a chest wound.

Carolyn also witnessed the fight between Ernest and appellant, and said appellant started the fight. After the fight ended, she heard appellant say "he keeps his piece," which she believed meant appellant was tired of "people messing over him." She also had seen appellant with a gun earlier in the day and had heard him shoot his gun inside his house. She said Ernest was walking toward his house to get his asthma pump and she was standing in

the doorway when she heard gunfire. She saw appellant point his gun at her house. She heard appellant say "Don't hit the old lady standing in the door." With her and all the children safely inside her house, Ernest walked past her in the house and said "I'm hit." Carolyn told her granddaughter to take him to the hospital.

Ernest's father-in-law was inside the house when the gunfire began. He saw Ernest walk into his own room and retrieve a gun from under his bed. He never saw Ernest alive again. Ernest returned fire, and was fatally shot by appellant's brother Jeremy. Jeremy was convicted of murder in a separate trial.

Two days later, police, while executing a search warrant on appellant's house, found an empty ammunition box for a .44-caliber revolver, a live .44-caliber round, and a projectile in the floor that was consistent with a bullet fired from a .44-caliber revolver. When shown a picture of a nine-millimeter gun, Patrick testified it was similar to the one fired by Jeremy. Patrick described appellant's gun as a revolver.

After considering all the evidence in the light most favorable to the verdict, we conclude a jury was rationally justified in finding appellant's guilt beyond a reasonable doubt on the charge of aggravated assault with a deadly weapon.

(Adm. R., Mem. Op. 3-5, ECF No. 9-15.)

In *United States v. Powell,* the Supreme Court said that "where truly inconsistent verdicts have been reached, '[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." 469 U.S. 57, 64-65 (1984) (quoting *Dunn,* 284 U.S. at 393). The Court explained:

Inconsistent verdicts . . . present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it

20

is unclear whose ox has been gored. Given this
uncertainty, and the fact that the Government is
precluded from challenging the acquittal, it is hardly
satisfactory to allow the defendant to receive a new
trial on the conviction as a matter of course. . . .
[N]othing in the Constitution would require such a
protection. . . . For us, the possibility that the
inconsistent verdicts may favor the criminal defendant as
well as the Government militates against review of such
convictions at the defendant's behest.

*Id.* at 65. *See also United States v. Agofsky,* 516 F.3d 280, 283 (5th

Cir.), *cert. denied,* 555 U.S. 837 (2008) ("The Supreme Court held

that consistency in verdicts is not necessary, writing that it 'is

possible' that 'the verdict may have been the result of compromise,

or of a mistake on the part of the jury . . . .' But verdicts cannot

be upset by speculation or inquiry into such matters."). The review

for sufficiency of evidence "should not be confused with the

problems caused by inconsistent verdicts [and] should be independent

of the jury's determination that evidence on another count was

insufficient." *Powell,* 469 U.S. at 67. Accordingly, consistency is

unnecessary under clearly established Supreme Court precedent.

The state courts' application of *Dunn* and *Jackson* was

reasonable because the evidence was sufficient to satisfy the

"substantive elements" of aggravated assault as defined by state

law. *See Jackson,* 443 U.S. at 324 n.16. Read in conjunction with the

law of parties (set forth in the court's instructions), the

substantive elements of aggravated assault demand proof beyond a

reasonable doubt that the defendant or someone for whom the

defendant is criminally responsible committed assault and used or

21

exhibited a deadly weapon. The State's evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational jury to find Petitioner guilty of aggravated assault beyond a reasonable doubt.

## C. State Habeas Proceedings

Finally, under his fifth ground, Petitioner raises the following claim (all spelling, punctuation, and/or grammatical errors are in the original):

> The [Texas] Court of Appeals abused its discretion in making an unreasonable determination of the facts [and denying him habeas relief], without conducting a "sue sponte" review of the record.

(Am. Pet. 12, ECF No. 22.)

A full and fair hearing in state court is not a prerequisite to the operation of AEDPA's deferential scheme. *Valdez v. Cockrell,* 274 F.3d 941, 946 (5th Cir. 2001). Furthermore, alleged defects in a state habeas proceeding are not cognizable under § 2254. *See Rudd v. Johnson,* 256 F.3d 317, 319-20 (5th Cir.), *cert. denied,* 534 U.S. 1001 (2001).

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, a certificate of appealability will not be issued. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Under this standard, when a district court

denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When the district court denies the petition on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of Petitioner's constitutional claims or procedural rulings. Therefore, a certificate of appealability should not issue.

SIGNED June 2, 2017.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE